UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHAWNA MCINTIRE,<br><br>                    Plaintiff,<br><br>  vs.<br><br>HOUSING AUTHORITY OF SNOHOMISH COUNTY, a municipal corporation;<br><br>                    Defendant. | No.<br><br>COMPLAINT |

Plaintiff Shawna McIntire alleges as follows:

## I.    INTRODUCTION

The federal Violence Against Women Act (VAWA) is a comprehensive statute designed to combat violence against women in its many forms. See 34 U.S.C. §§ 12291 *et seq*. Among other safeguards provided by VAWA, the statute protects tenants under a covered housing program from being evicted from housing or having their assistance terminated "on the basis that the applicant or tenant is or has been a victim of domestic violence." 34 U.S.C. § 12491(b)(1). See 24 C.F.R. § 5.2005(b). VAWA protections entitle tenants to receive notification of their rights prior to or at the time of any adverse action taken against them. *Id.* VAWA further requires covered housing providers to allow victims to remain in their homes after the removal of the

1   domestic violence perpetrator in order to allow the domestic violence victim the opportunity to

2   establish eligibility so as to remain in the home. 42 U.S.C. §12491.

3         This case concerns the Housing Authority of Snohomish County's ("HASCO") failure to

4   follow federal law protecting victims of domestic violence. HASCO worked with Mrs.

5   McIntire's husband to remove her from the voucher, without notice to her, after her husband was

6   arrested for abusing her. HASCO removed Mrs. McIntire from the family's voucher based solely

7   on her husband's request and HASCO's erroneous practice that only veterans may receive the

8   housing voucher after a family breakup. Due to her loss of the voucher HASCO evicted Mrs.

9   McIntire, obtained a judgment against her for the rent the voucher would have paid for, and

10  refused to allow her to retrieve her personal possessions taken during the eviction. HASCO then

11  destroyed all her belongings, including her seven-year-old daughters' clothes, toys, stuffed

12  animals, as well as her family keepsakes and her father's ashes.

13        HASCO's actions were in clear violation of federal law. During a family breakup due to

14  domestic violence, federal law requires that the victim of domestic violence receive the housing

15  voucher. This did not happen, and Mrs. McIntire suffered as a result. This Court should find that

16  HASCO violated the Violence Against Women Act, Mrs. McIntire's procedural due process

17  protections, and that its practice of transferring vouchers to veterans instead of victims

18  discriminates against women in violation of the Fair Housing Act and Washington's Law

19  Against Discrimination. Ms. McIntire additionally brings claims for breach of contract, common

20  law conversion, violation of Washington's Consumer Protection Act, and declaratory judgment,

21  under state law, to vindicate her legal rights.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. §3613(a) under the Fair Housing Act, and under 42 U.S.C. §1983.

2. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiff's state law claims because they are related to Plaintiff's original jurisdiction claims, arise out of a common nucleus of related facts, and are part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in the Western District of Washington because the claims arise in Snohomish County.

## III. PARTIES

4. Plaintiff Shawna McIntire is a resident of Snohomish County, Washington and lived at the Alderwood Apartments in Lynnwood.

5. Defendant Housing Authority of Snohomish County is a municipal corporation organized under the laws of Washington State to provide housing for low-income people. Defendant receives federal financial assistance to provide this housing. Defendant was at all times material to this complaint Shawna McIntire's landlord and the administrator of the VASH (Veterans Affairs Supportive Housing) voucher issued to her family.

## IV. FACTS

6. On January 17, 2017, the McIntire family rented an apartment in Alderwood Manor at 5600 186th Place SW, in Lynnwood. Alderwood Manor is a housing development owned and operated by HASCO. The McIntire family consisted of Shawna, her husband Kenneth, and their then four-year-old daughter.[1]

---

[1] To avoid confusion, Mr. and Mrs. McIntire will be referenced by their first names.

7. Shawna and her family used a VASH Voucher to help pay the rent. A VASH voucher is given to military veterans and their families by the U.S. Department of Veterans' Affairs and U.S. Department of Housing and Urban Development to provide affordable housing. Kenneth is a veteran and was considered the head of household for the voucher.

8. The McIntire family's income consisted entirely of Kenneth's disability benefits he received as a disabled veteran. Shawna was not employed outside the household and was the primary care giver for their daughter.

9. Throughout the tenancy, Kenneth subjected Shawna to domestic violence, which resulted in his arrest and removal from the apartments on May 5, 2019. In addition, as the only family member with any income and as the head of household on the housing voucher, Kenneth had control over the housing and control over the family's finances. As the head of household, Kenneth was the main point of contact with HASCO and was the primary person who completed the family's annual paperwork.

10. On October 18, 2018, Kenneth filled out the Housing Authority's annual review for the family. In that review, Kenneth indicated the family might break up. In the paperwork, Kenneth did not list Shawna as a member of the household and indicated to HASCO that he was unsure how to fill out the form since his wife is still living in the unit.

11. In response to the family's annual review, on November 29, 2018, HASCO issued a notice to Kenneth stating the family had 10 days to notify HASCO of a change in persons in the unit. Shawna was still residing in the family apartment and was unaware that her husband had asked her to be removed from the household.

12. Following the November 29 notice, HASCO preceded with listing only Kenneth and the couple's daughter as the only household residents. Shawna was not listed as residing in the apartment even though she continued to live there.

13. On March 1, 2019, Kenneth emailed an employee of HASCO to ask how to remove his wife from the family's housing voucher.

14. On March 4, 2019, a HASCO employee responded to Kenneth e-mail, acknowledging his request to remove his wife from the voucher and instructed him how Shawna could be removed from the voucher.

15. On May 5, 2019, Kenneth was arrested for domestic violence committed against Shawna. A no-contact order was issued the following day that prevented Kenneth from returning to the home. Kenneth did not live in the home after this point. He told Shawna that if she opened her mouth and told anyone she would be sorry.

16. On or about May 8, 2019, Shawna delivered a form to HASCO indicating that Kenneth had been removed from the home and a no-contact order issued against him. HASCO did not notify Shawna of her VAWA rights or initiate the family break-up procedure.

17. Three days after the issuance of the no-contact order, Kenneth again contacted HASCO and asked for help to remove his wife from the family's voucher.

18. In response, a HASCO employee reviewed the family's paperwork an indicated Shawna was removed from the voucher during the previous annual review, saying, "at this point, she is not included in your household."

19. On November 14, 2019, Kenneth again notified HASCO that he and Shawna had separated and that he had moved out of the home and further asked for advice about how to remove Shawna from the home. In response, HASCO's employee stated that both he and his

wife were on the lease, thus, he needed to get his wife to sign a roommate release. HASCO's staff also stated that Kenneth could obtain a court order to have her removed.

20.     In subsequent emails, Kenneth notified HASCO that he would try to remove himself from the lease and that Shawna thinks that HASCO will still work with her even though she has no income. Kenneth then stated: "And the voucher goes with me and she isn't on it." In response to this statement, on December 2, 2019, the HASCO employee confirmed Kenneth's position by stating Shawna "was removed from the voucher and household on March 12,[]2019."

21.     In response to Kenneth's statement about not being able to get Shawna out of the home, the HASCO employee told Kenneth "Civilly since you are the only lease holder, you can request to have the locks changed or you can get a no-contact order from the courts." The HASCO employee further indicated she could post a 3-day Nuisance notice to get her to vacate if he could obtain a roommate release form from her.

22.     On January 9, 2020, HASCO issued a 10-day notice to vacate addressed to Kenneth, but delivered to Shawna's unit. The notice alleged that only a person named Theresa Flannigan, unknown to Shawna, was permitted to reside in the unit. The VASH voucher had already paid the apartment rent for January. Shawna did not understand the significance of the notice or why she would not be listed as a resident in her own home. The notice did not contain any information about VAWA.

23.     On January 30, 2020, at the direction of Kenneth, Shawna signed a roommate release to remove him from the rental agreement. Shawna believed she and her daughter would remain on the lease and that Kenneth was being removed from the lease. HASCO staff were aware of the roommate release and did not inform Plaintiff of her VAWA rights.

24. On February 7, 2020, two HASCO employees visited Shawna's apartment. The employees told her that the voucher was being moved to a different unit for Kenneth's benefit. She was also told the VASH voucher had paid the February rent. She was surprised that the voucher was removed from the family unit when she and their daughter were still living in the unit.

25. On February 7, 2020, Shawna e-mailed HASCO to update her contact information and ask for the amount due for rent. Additionally, Shawna requested to know when she was removed from the HASCO voucher.

26. On February 10, 2020, HASCO informed Shawna that the voucher subsidy had been terminated at the end of January and that she owed the entire $1300 in monthly rent. HASCO's employee stated that she needed to review the file to see what happened but that she would have Shawna "added back on." Shawna understood this to mean that she would be put back on the voucher.

27. Ten days later, Shawna received a 14-day notice to pay or vacate from HASCO that stated she owed $922, which was the amount previously covered by the VASH voucher.

28. On February 26, 2020, Shawna implored HASCO to work with her because she was trying to come up with the additional money. Shawna stated she had paid the tenant portion for February because she had understood the voucher had paid its portion for the month. She said she was working to get a grant and indicated that she and her young daughter were struggling without the support. HASCO replied that notice of the recapture had been given as soon as it was known, and that HASCO had already given Shawna a few extra days to come up with the money.

29. Three days later, Shawna requested a form or letter showing her balance for applying for TANF benefits. She also requested aid from DV victim resources.

30. On March 9, 2020, a HASCO employee emailed Shawna requesting payment, stating she was two months past due in rent.

31. The same day Shawna dropped off a money order for $670, she stated that she thought St. Vincent may pay the other $250. Additionally, she told HASCO that she had been in contact with DV services and would reconnect with them, again informing HASCO that she was a victim of domestic violence.

32. On March 16, 2020, HASCO offices closed due to the COVID-19 pandemic. Tenants were required at that time to pay rent in a drop box. The Governor of the state of Washington later imposed a moratorium on residential evictions that lasted until July 1, 2021.

33. Ten days later, HASCO sent another 14-day pay or vacate notice to Shawna.

34. Despite Plaintiff's notice to HASCO that she was a DV victim attempting to maintain housing for herself and child, and taking steps to pay the rent, HASCO began sending her a series of notices of abandonment because of the failure to pay the full contract rent.

35. Over the course of 2020, HASCO sent Shawna at least six notices of abandonment due to their inability to evict her for nonpayment of rent for the portion the voucher would have been covering. Each time, Shawna would notify HASCO that her and her daughter were still living there. Shawna also notified HASCO she was having difficulty in finding employment due to the COVID-19 pandemic.

36. After the resumption of residential evictions in Washington State on July 1, 2021, HASCO evicted Shawna and her daughter for the unpaid rent that accumulated during the eviction moratorium. HASCO obtained a default order against Shawna after Shawna mistakenly

served her notice of appearance on HASCO instead of their attorney. After evicting her, the locks were changed, and she was unable to take her belongings other than a small elementary school backpack with a few of her daughter's clothes. She was not allowed to return to get additional clothes, her father's urn, or her daughter's favorite toys.

37. Shawna's belongings were taken to storage on January 6, 2022.

38. Shawna attempted to reach HASCO in order to pay for and retrieve her belongings, including emailing HASCO on February 22, 2022, asking how much she owed so that she could get her belongings back. A HASCO employee responded: "Your balance due is $36,136.50." In reality, her balance to retrieve her belongings back was less than $2000.

39. Approximately 45 days after her eviction, HASCO threw away all of Shawna's personal possessions in their custody, including her seven-year-old daughter's stuffed animals, toys, keepsakes, and the ashes of Plaintiff's father. At no point did HASCO give Shawna a notice of sale. Under information and belief, HASCO never attempted a sale of the possessions as required by RCW 59.18.312.

40. On or about April 5, 2022, Shawna asked HASCO for a grievance hearing regarding the loss of her voucher. HASCO denied this request because it concluded she "does not have a right to an informal hearing to dispute a voucher termination because the voucher was not terminated."

41. At no point has HASCO ever initiated its family break-up procedure for the McIntire family. HASCO never notified Shawna of Kenneth's attempts to remove her from the household or from the unit despite being aware of his domestic violence against her. HASCO did not inform Shawna that its staff were instructing and assisting Kenneth on how to remove Shawna from the VASH housing voucher and thereby terminate her housing benefits.

42. HASCO has a policy or practice of failing to provide administrative or grievance hearings to recipients who lose a valuable property interest when they are removed from the voucher if the voucher was not terminated.

43. HASCO has a policy or practice that a VASH voucher may only be transferred to a veteran during a family breakup.

44. This policy is in violation of HUD's directions to HASCO and other public housing authorities that state; "In accordance with Notice PIH 2017-08, for HUD-Veterans Affairs Supportive Housing (HUD-VASH) vouchers, when the veteran is the perpetrator of domestic violence, the victim must continue to be assisted. 24 CFR 982.315; Notice PIH 2017-08, at 33; HASCO AP 3-1-C. The victim should be given and Housing Choice Voucher if one is available. If a regular HVC is not available, the victim will continue to use the HUD-VASH voucher, which must be issued to another eligible family on the voucher's turnover."

45. On September 21, 2022, Plaintiff served a notice of claim on defendant HASCO. Defendant did not respond or otherwise resolve the notice of claim to Plaintiff's satisfaction and 60 days have passed.

V.    CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF: Violation of Plaintiff's Rights under the Violence Against Women Act**

46. Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs.

47. As a victim of domestic violence living in a covered property, Plaintiff had the right to receive notification of her rights under VAWA and to receive the VASH voucher after a family breakup. HASCO violated these rights.

COMPLAINT - 10

**Northwest Justice Project**
2822 Colby Ave. Suite 400
Everett, WA 98201
Tel. (425) 252-8515  Fax (425) 252-5945

48. At all relevant times herein, Alderwood Manor was a "covered property" for purposes of the Violence Against Women Act.

49. HASCO is required to provide the tenant a notification of victim rights under VAWA when terminating the tenant's access to housing benefits. 24 CFR L 5.2005(2)(iii).

50. HASCO may not take away the rights of the eligible tenants to the unit who is or has been a victim or otherwise punish the remaining tenants. HASCO AP 16-50. HASCO must allow the victim to remain in the unit for a period of time, in order to establish eligibility under the program or under another HUD housing program covered by VAWA or find alternative housing. In order to deny relief under VAWA, HASCO must provide the individual requesting relief a written request for documentation of abuse. 24 CFR §2.2007; HASCO AP 16-48.

51. Plaintiff is a victim of domestic violence, lived in a property covered by the Violence Against Women Act, and was entitled to receive notice of the denial of access to her abuser's housing assistance.

52. HASCO violated these rights when it failed to inform Plaintiff of her rights after a family breakup of which it was aware or should have been aware, and violated these rights when it gave the voucher to her abuser.

53. Defendant failed to give notices and forms required by 42 U.S.C. § 12491(d)(2) when it terminated Mrs. McIntire from the voucher program.

54. Defendant's failures to comply with the Violence Against Women Act were actions taken under color of state law and deprived Mrs. McIntire of her federal rights in violation of 42 U.S.C. § 1983.

**SECOND CLAIM FOR RELIEF:  Violation of Procedural Due Process Rights**

55. Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs.

56. Mrs. McIntire has a protected property interest in maintaining her housing voucher.

57. HASCO failed to give Mrs. McIntire notice or an opportunity for a hearing when it denied her the opportunity to have the VASH voucher transferred to her after the family breakup.

58. HASCO's policy or practice of refusing to give vouchers to the victims of abusers and only to give vouchers to veterans is expressly or impliedly preempted by federal law.

59. Mrs. McIntire's emotional distress and loss of property were reasonably foreseeable as a result of HASCO's failures.

60. HASCO is a "person" and acted under color of state law when it denied Mrs. McIntire's due process rights.

61. Defendant's failures to comply with the United States Constitution were actions taken under color of state law and deprived Mrs. McIntire of her federal rights in violation of 42 U.S.C. § 1983.

**THIRD CLAIM FOR RELIEF: Breach of Contract**

62. Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs.

63. HASCO had an obligation under the rental agreement and the voucher addendum to the rental agreement to comply with the obligations of the Violence Against Women Act, including all implementing regulations and guidance regarding the rules governing family break-up policies. As a party to the rental agreement, Plaintiff was entitled to receive the protection of these obligations.

64. Those policies include an obligation in the VASH voucher program to ensure that when the "veteran is the perpetrator of such violence, the victim must continue to be assisted."

PIH Notice 2017-08. Thus, pursuant to VAWA, HASCO was obligated to transfer the voucher to Mrs. McIntire upon a family breakup due to domestic violence.

65. HASCO breached its contractual obligations when it failed to follow the requirements of VAWA by removing Mrs. McIntire from the voucher and allowing Plaintiff to either secure a regular Housing Choice Voucher, or if none is available, maintain the VASH voucher.

**FOURTH CLAIM FOR RELIEF: Declaratory Judgment**

66. Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs.

67. There is a present and justiciable controversy between the parties regarding Plaintiff's loss of housing assistance and this Court can grant effective relief to resolve the controversy.

68. HASCO violated its own Section 8 administrative plan and federal law when it failed to transfer the voucher to Mrs. McIntire after the family breakup.

69. This Court should determine the respective rights and obligations of the Parties under the administrative plan and find that HASCO's actions violated the Plan and denied Mrs. McIntire her voucher in violation of its own administrative policies.

70. Plaintiff is entitled to declaratory relief under the Washington State Declaratory Judgment Act.

**FIFTH CLAIM FOR RELIEF: Violation of the Fair Housing Act and the Washington Law Against Discrimination**

71. Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs.

72. The federal Fair Housing Act and the Washington Law Against Discrimination prohibit facially neutral policies that create discriminatory effects in the provision of housing services.

73. HASCO's policy or practice of refusing to transfer VASH vouchers to non-veteran victims of domestic violence discriminates in effect against women based on their gender, as VASH voucher holders are overwhelmingly likely to be men. Victims of domestic violence are overwhelmingly likely to be women.

74. Thus, HASCO's facially neutral practice that only gives a voucher to a veteran after a family break up creates a disparate impact in the provision of housing that harms women on the basis of their gender.

75. HASCO has no legitimate, non-discriminatory reason to maintain such a practice in violation of federal law.

76. Plaintiff was harmed by HASCO's violation.

**SIXTH CLAIM FOR RELIEF: Conversion**

77. Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs.

78. The Defendant took possession of Plaintiff's personal property following the eviction.

79. Plaintiff requested that Defendant store her property following eviction pursuant to RCW 59.18.312.

80. Under RCW 59.18.312, Plaintiff was entitled to the return of her personal property upon her payment of the actual or reasonable drayage or storage costs, whichever is less.

Northwest Justice Project
2822 Colby Ave. Suite 400
Everett, WA  98201
Tel. (425) 252-8515  Fax (425) 252-5945

81. Defendant failed to cooperate with Plaintiff in order for her to regain her personal property.

82. Under RCW 59.18.312, Defendant had an obligation to hold a reasonable sale of Plaintiff's property and to provide prior notice to Plaintiff of the sale.

83. Defendant failed to hold a reasonable sale, or alternatively, failed to provide Plaintiff of prior notice to any sale.

84. Defendant destroyed Plaintiff's personal property in violation of the procedures set forth under RCW 59.18.312.

85. Defendant was on notice that Plaintiff wished to regain her possessions and would pay the statutory amount necessary to regain them.

86. Plaintiff was entitled to regain her personal belongings, was entitled to a notice of sale, and was deprived of that possession and notice, and was damaged as a direct and proximate result of the actions of the Defendant.

**SEVENTH CLAIM FOR RELIEF: Violation of the Consumer Protection Act**

87. Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs.

88. Pursuant to RCW 19.86.090: "Any person who is injured in his … property by a violation of RCW 19.86.020… may bring a civil action in superior court to enjoin further violations, to recover the actual damages sustained by him … together with the costs of the suit, including a reasonable attorney's fee. In addition, the court may, in its discretion, increase the award of damages up to an amount not to exceed three times the actual damages sustained: PROVIDED, That such increased damage award for violation of RCW 19.86.020 may not exceed twenty-five thousand dollars…."

89.     Violations of RCW 49.60.222 are an unfair practice and are per se violations of chapter 19.86 RCW. See RCW 49.60.030(3).

90.     To the extent this Court finds Defendant violated RCW 49.60.222 as set forth in Plaintiff's Fifth Claim, then such violation is a per se violation of RCW 19.86 et seq.

91.     Due to Defendant's unfair action of unlawful discrimination in housing, Plaintiff has been damaged in an amount to be proven at trial.

92.     Further, "[w]hen rights and remedies are available to resolve a landlord-tenant dispute under the RLTA, they operate to the exclusion of more general remedies available under the Consumer Protection Act (CPA), chapter 19.86 RCW. But not all landlord-tenant disputes are addressed by the RLTA. When the RLTA's rights and remedies are not at issue, there is no basis for barring other statutory claims, such as those under the CPA*." Lewis v. Zanco*, 16 Wn. App.2d 819, 820, 483 P.3d 836 (2021).

93.     RCW 59.18.312 sets forth requirements regarding landlords storing a tenant's possession after an eviction and discusses a tenant's "rights." However, RCW 59.18.312 provides no "remedy" to a tenant when a landlord does not follow the proper procedures regarding storing/disposing a tenant's personal property. Because RCW 59.18.312 does not provide both a "right" and a "remedy" to a tenant harmed, RCW 59.18.312 does not operate to the exclusion of other statutory remedies, such as the Consumer Protection Act.

94.      Plaintiff requested that Defendant store her property following eviction pursuant to RCW 59.18.312.

95.     Defendant had an obligation to hold a reasonable sale of Plaintiff's property and to provide prior notice to Plaintiff of the sale.

96. Defendant's failure to provide prior notice and destroying her property was an unfair or deceptive practice in trade or commerce.

97. Defendant's activities have an impact on the public interest because they have the capacity to injure or deceive others.

98. Defendant failed to provide prior notice to the Plaintiff as required by statute.

99. Plaintiff was harmed in her property and sustained actual damages as a result of the Defendant's breach.

100. Defendant's actions constitute an unfair and deceptive act committed in trade or commerce.

## VI.   REQUEST FOR RELIEF

Plaintiff requests the following relief:

1. Temporary, preliminary, and permanent injunctive relief enjoining HASCO's policy of only assigning vouchers to veterans after family breakup and reinstating Mrs. McIntire's housing assistance;

2. For Mrs. McIntire's special damages, including the monetary amount of the loss of her voucher through the actuarially determined number of years to which she would have been entitled to receive it, or in the alternative a new voucher and compensation for the lost assistance; for the loss of her property destroyed by HASCO; for her loss of income caused by the disruption of her eviction; for any other special damages to which she may be entitled;

3. Damages for emotional distress in an amount to be determined by the finder of fact;

4. Punitive damages for violation of the Fair Housing Act;

5. Treble damages for violation of the Consumer Protection Act;

6. Declaratory relief determining HASCO's policy and actions to be in violation of federal law and in breach of the parties' rental agreement;

7. Attorneys fees and costs as authorized by law;

8. Any other relief to which Plaintiff may be entitled.

DATED this 12th day of December, 2022.

NORTHWEST JUSTICE PROJECT

/s/Scott Crain
Scott Crain, WSBA #37224
Attorney for Plaintiff
401 – 2nd Avenue South, #407
Seattle, WA 98104
Phone: (206) 707-0900
Fax:    (206) 299-3112

/s/Constance van Winkle
Constance van Winkle, WSBA #58901
Attorney for Plaintiff
2822 Colby Ave Ste 400
Everett, WA 98201-3659
Phone: (206) 710-9974
Fax:    (206) 252-5945

/s/Tyler Graber
Tyler Graber, WSBA #46780
Attorney for Plaintiff
711 Capitol Way S, #704
Olympia, WA, 98501
Phone: (509) 381-2315