UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHAWNA MCINTIRE, | |
| Plaintiff, | Case No. C22-1757-MLP |
| v. | ORDER |
| HOUSING AUTHORITY OF SNOHOMISH COUNTY, | |
| Defendant. | |

## I.      INTRODUCTION

This matter is before the Court on Plaintiff Shawna McIntire's ("Plaintiff") Motion for Partial Summary Judgment.[1] (Mot. (dkt. # 16).) Plaintiff seeks summary judgment on her claims of: (1) violation of the Violence Against Women Act ("VAWA"); (2) violation of procedural due process under 42 U.S.C. § 1983; (3) breach of contract; and (4) conversion.[2] Defendant Housing Authority of Snohomish County ("Defendant" or "HASCO") opposed the Motion (Resp. (dkt.

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 5.)

[2] Plaintiff did not move for summary judgment on her fourth, fifth, and seventh causes of action for declaratory judgment and violations of Washington's Fair Housing Act, Law Against Discrimination, and Consumer Protection Act.

# 19)) and Plaintiff filed a reply (dkt. # 22).[3] The Court held oral argument on March 29, 2024. (Dkt. # 34.)

Having considered the parties' submissions, oral argument, the balance of the record, and the governing law, Plaintiff's Motion (dkt. # 16) is GRANTED, as further explained below.

## II.    BACKGROUND

### A.    Factual Background

In January 2017, Plaintiff, her husband Kenneth McIntire, and their minor daughter rented an apartment at Alderwood Apartments in Lynnwood, Washington (the "Unit"). (Declaration of Shawna McIntire (the "McIntire Decl.") (dkt. # 18) at ¶ 3, Ex. 18 (the "Rental Agreement") (dkt. # 18-1).) Alderwood Apartments is an affordable housing development owned and operated by HASCO. (*Id.*) HASCO is a public housing authority and municipal corporation that receives funding from the federal government to provide housing to low-income people in Snohomish County. (Dkt. # 9 at ¶ 5.)

The McIntire family used a Veterans Affairs Supportive Housing ("VASH") voucher to pay a substantial portion of their rent. (McIntire Decl. at ¶ 5.) The U.S. Department of Veterans' Affairs and U.S. Department of Housing and Urban Development ("HUD") grant VASH vouchers to military veterans and their families to provide affordable housing. (Dkt. # 9 at ¶ 7.) Mr. McIntire is a veteran, and the VASH voucher was held in his name. (McIntire Decl. at ¶ 5.) Plaintiff is not a veteran. (*Id.*) As a condition of using the VASH voucher, the Rental Agreement included a HUD-mandated voucher addendum known as the Housing Assistance Payments Contract (the "HAP Contract"). (*See* Declaration of Scott Crain (the "Crain Decl.") (dkt. # 17),

---

[3] Defendant also filed a surreply (dkt. # 24), which Plaintiff moved to strike (dkt. # 29) for containing extraneous arguments and facts in violation of Local Court Rule 7(g). The Court granted Plaintiff's motion to strike. (Dkt. # 33.)

Ex. 11; McIntire Decl. at ¶ 4; dkt. # 9 at ¶ 63.); *see also* 24 C.F.R. § 982.308(f) (requiring public housing agencies to use the HUD-approved tenancy addendum in rental agreements). The HAP Contract was renewed by the family every year and, in relevant part, required HASCO to comply with VAWA. (*Id.*) The parties agree that HASCO was a covered housing provider for purposes of VAWA. (Dkt. # 9 at ¶ 51.)

Plaintiff testified that Mr. McIntire abused her during their tenancy in the Unit. (McIntire Decl. at ¶ 6.) In February and April of 2017, another tenant in Alderwood Apartments complained to HASCO about loud noises coming from the Unit, including an incident where the other tenant claimed she heard Mr. McIntire "yelling at the top of his lungs and swearing and fighting in his apt." (Crain Decl., Exs. 1-2.)

In October 2018, Mr. McIntire completed HASCO's annual review wherein he stated that he and Plaintiff might separate. In March 2019, Mr. McIntire emailed HASCO employee Phyllis Renteria to inquire about removing Plaintiff as a beneficiary from the VASH voucher. (Crain Decl., Ex. 3.) Mr. McIntire claimed that Plaintiff was abusive towards him, that she had previously called the police to report his abuse, and that she had threatened to call the police again. (*Id.*) Mr. McIntire denied that he was physically abusive towards Plaintiff and accused her of falsifying her abuse allegations. (*Id.*) Ms. Renteria responded to Mr. McIntire, acknowledged that she understood the family was breaking up, and sent him a change of circumstances form. (*Id.*) Plaintiff was not included in these communications and was not informed that Mr. McIntire was seeking to remove her as a beneficiary of the VASH voucher. (*See id.*; McIntire Decl. at ¶ 12.) HASCO subsequently removed Plaintiff as a beneficiary of Mr. McIntire's VASH voucher but did not notify her or provide her with any documents related to VAWA. (*Id.*)

1        On May 5, 2019, Mr. McIntire was arrested and removed from the Unit for abusing

2    Plaintiff. (McIntire Decl. at ¶ 9.) The following day the Lynnwood Municipal Court issued a

3    two-year no-contact order against Mr. McIntire that prevented him from living at Alderwood

4    Apartments. (Crain Decl., Ex. 4; McIntire Decl. at ¶ 9.) Mr. McIntire did not move back into the

5    Unit, but he remained a tenant under the Rental Agreement. (McIntire Decl. at ¶ 11.) HASCO

6    did not argue or identify any evidence that Plaintiff was not a victim of domestic violence. (*See*

7    Resp.)

8        Plaintiff attested that on May 8, 2019, she gave HASCO employee Nancy Larson a

9    change of circumstances form requesting that Mr. McIntire be removed from the household due

10   to the no-contact order. (McIntire Decl. ¶ 10, Ex. 19.) Ms. Larson and Defendant denied ever

11   receiving a copy of this form. (Declaration of Timothy J. Repass (the "Repass Decl.") (dkt.

12   # 20), Ex. Q at 2-3.)

13       On November 14, 2019, Mr. McIntire emailed HASCO Senior Asset Manager Kristen

14   Whittaker, saying that he and Plaintiff had separated and asking how he could remove Plaintiff

15   from the Unit. (Crain Decl., Ex. 5 at 3-4.) Ms. Whittaker confirmed that Plaintiff had been

16   removed as a beneficiary from the VASH voucher and initially recommended that Mr. McIntire

17   change the locks, post an eviction notice, or seek a no-contact order to remove Plaintiff from the

18   Unit. (*Id.* at 1.) After realizing that Plaintiff was still a legal tenant, Ms. Whittaker stated that a

19   roommate release executed by both Plaintiff and Mr. McIntire would be required to remove

20   either tenant from the Unit's lease. (*Id.*) Mr. McIntire stated that he still held the VASH voucher

21   in his name and that he would likely vacate the Unit. (*Id.* at 2.)

22       On January 9, 2020, Defendant sent Plaintiff a "Ten-day notice to comply or vacate" that

23   mistakenly listed a "Teresa Flannigan" as the only person authorized to live in the Unit.

(McIntire Decl. at ¶ 11.) Plaintiff testified that there was no information related to VAWA attached to the notice, and HASCO conceded this in its answer. (*Id.*; *see* dkt. # 9 at ¶ 22.)

On January 30, 2020, Plaintiff and Mr. McIntire signed a roommate release to remove Mr. McIntire as a party to the Rental Agreement. (Declaration of Jenisa Story, (the "Story Decl.") (dkt. # 21) at ¶ 10, Ex. D.) On February 7, 2020, HASCO employees Ms. Whittaker and Troy Burke visited Plaintiff in the Unit to discuss rent and the VAWA voucher. (Crain Decl., Exs. 6, 14 at 19; Repass Decl., Ex. M at 2-6.) The exact contents of their in-person discussion are disputed, but in an email dated March 10, 2020, to fellow HASCO employees, Ms. Whittaker recounted her recent interactions with Plaintiff:

> I have been in contact with Shawna and Kenneth and confident Kenneth will not be back. I informed Shawna that she will be responsible for the entire portion of rent and issued her a pay or vacate for last month. Shawna has been keeping me updated and has been contacting resources to pay the balance. ***She also has documentation of being a VAWA victim.***

Crain Decl., Ex. 8 at 2 (emphasis added).[4]

Ms. Whittaker later testified in her deposition that she never sent Plaintiff a written request for documentation of Plaintiff's status as a domestic violence victim. (Crain Decl., Ex. 14 at 18.) Ms. Whittaker also admitted that Plaintiff told her that VAWA was applicable to her. (*Id.* at 32-33.)

Plaintiff and Ms. Whittaker continued email correspondence regarding rent, the VAWA voucher, and housing assistance for victims of domestic violence in March 2020. (Crain Decl., Exs. 6-7.) In one such exchange dated March 6 and 9, 2020, Plaintiff asked Ms. Whittaker if she could apply for "aid for victims of domestic violence," to which Ms. Whittaker recommended

---

[4] When shown this document at her deposition, Ms. Whittaker testified that she "worded that wrong," and that she understood Plaintiff was going to provide her with documentation of being a VAWA victim in the future. (Crain Decl., Ex. 14 at 16-17.)

Plaintiff contact Domestic Violence Service of Snohomish County. (*Id.*, Ex. 7.) Plaintiff replied that she had been in contact with a domestic violence service and would reconnect with them. (*Id.*) Plaintiff did not have money to pay all the rent without the contribution of Mr. McIntire's VASH voucher. (McIntire Decl. at ¶¶ 13-14.)

Meanwhile, HASCO sent Plaintiff a 14-day notice to pay rent or vacate dated February 20, 2020. (McIntire Decl., Ex. 21.) The notice did not mention VAWA, and Plaintiff attested that there were no VAWA-related forms attached to the notice. (*Id.* at ¶ 14.) HASCO sent Plaintiff another 14-day notice to pay rent or vacate dated March 10, 2020. (*Id.*, Ex. 22.) This notice did reference VAWA, stated that VAWA-related HUD forms 5380 and 5382 were attached to the notice, and instructed the recipient to return the VAWA certification form if it was relevant to their circumstances. (*Id.*) Despite the notice's reference to attachments, Plaintiff attested that no forms were attached to this notice. (*Id.* at ¶ 14.) When questioned regarding these documents at deposition, HASCO's corporate designee Sarah Max testified that she did not know if any VAWA forms were attached to the notices, and that HASCO did not document this information. (Crain Decl., Ex. 17, at 5-6.) Instead, Ms. Max suggested that Ms. Whittaker might have personal knowledge on the subject. (*Id.*) For her part, Ms. Whittaker testified that she had no knowledge of anyone giving Plaintiff the VAWA certification form, that the form was "not generated as a policy," and that tenants could find the form online. (Crain Decl., Ex. 14 at 34.) Indeed, there is no admissible evidence that the VAWA-mandated HUD forms were ever attached to the eviction notices HASCO sent to Plaintiff.

Between March 2020 and June 2021, the COVID eviction moratorium for unpaid rent was in place and Plaintiff continued living in the Unit. (McIntire Decl. at ¶ 14.) During this time, Defendant asserts that its employees provided Plaintiff with information about various housing-

related resources. (Story Decl., Ex. I.) Plaintiff submitted an application for housing assistance to HASCO dated December 6, 2020, wherein she again represented that she might be homeless because of domestic violence. (McIntire Decl. at ¶ 15, Ex. 23 at 3.) For reasons that are unclear, Plaintiff's application for benefits was denied. (*Id.* at ¶ 15.)

Residential evictions resumed in July 2021 and Defendant served Plaintiff with an eviction notice in September 2021. (Crain Decl., Ex. 14 at 21.) On October 11, 2021, Ms. Whittaker emailed Plaintiff regarding her unpaid rent and encouraged her to apply for rental assistance. (Story Decl., Ex. I.) Ms. Whittaker's email included another eviction notice dated October 25, 2021. (*Id.*) Again, this notice did not reference VAWA and there is no evidence that VAWA-mandated forms were attached to this notice or the September notice. (*Id.*)

In December 2021, HASCO obtained an order of default to evict Plaintiff for unpaid rent. (McIntire Decl. at ¶ 15.) A writ of restitution from the Snohomish County Sheriff's Office was posted to the Unit's door on December 8, 2021. (Story Decl., Ex. J.)

Plaintiff was evicted from the Unit by Snohomish County Sheriffs on December 28, 2021. (McIntire Decl. at ¶¶ 17-20.) Most of Plaintiff's property was left in the Unit, and Plaintiff subsequently sent Defendant a written demand to store her property and notice of a new mailing address. (*Id.* at ¶¶ 17-23, Ex. 27.) Though Defendant did not inventory Plaintiff's property, HASCO staff determined the value of the property to be greater than $250 and decided to store it rather than place it on the sidewalk. (Crain Decl., Ex. 14 at 23-25.) On January 6, 2022, Plaintiff's property was removed from the Unit and put into storage. (Dkt. # 9 at ¶ 37.)

Over the next several weeks, Plaintiff's counsel emailed with Ms. Whittaker regarding Ms. McIntire's property and the balance due. (Story Decl., Ex. K.) Defendants sent Plaintiff's counsel an accounting owed by Plaintiff which itemized $847.90 for storage, $1,725 in packing

and moving costs, $27,854 in back rent, and $5,859.60 in other costs, for a total balance due of $36,136.50. (*Id.*) Plaintiff's counsel asked HASCO for assurances that they would continue to store Plaintiff's property and whether they could waive the storage and moving costs to allow Plaintiff to pick up her property. (*Id.*)

On February 22, 2022, Plaintiff emailed HASCO Senior Accounting Technician Tamara Self to ask about retrieving her property, "so I can pay my bill so you dont [sic] sell my property." (McIntire Decl., Ex. 28.) Ms. Self responded minutes later saying that Plaintiff's "balance due is $36,136.50." (*Id.*) According to HASCO's prior accounting, this amount included all of Plaintiff's back rent, in addition to packing, moving, and storage costs. (Story Decl., Ex. K.) Ms. Self did not itemize the storage and drayage fees that needed to be paid for Plaintiff to retrieve her property, nor did she inform Plaintiff that disposal of her property was imminent. (McIntire Decl., Ex. 28.) The next day, February 23, 2022, Defendant threw away Plaintiff's property, claiming that much of the property was stolen and contaminated with drugs and feces. (Resp. at 13; McIntire Decl., Ex. 28.) Defendant did not send Plaintiff any notice of its intent to dispose of her property. (Crain Decl., Ex. 14 at 26.)

Plaintiff's counsel sent Defendant a letter dated March 24, 2022, requesting a grievance hearing regarding the loss of Plaintiff's benefits from the VASH voucher. (Crain Decl., Ex. 9.) HASCO's Director of Tenant Based Assistance Jodie Halsne responded by asserting that Plaintiff did not have a right to a grievance hearing because the VASH voucher was not in her name, was never terminated, and could only be held by veterans. (Crain Decl., Exs. 10, 15 at 16-17.)

### III.    DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is proper when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. It is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoted source omitted). The Court need not "scour the record in search of a genuine issue of triable fact." *Id.* (quoted source omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Nor can the nonmoving party "defeat summary

1  judgment with allegations in the complaint, or with unsupported conjecture or conclusory

2  statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see*

3  *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

4  **B.    Motion to Strike the Story Declaration**

5  Defendant's Response included a Declaration of Jenisa Story, which identifies Ms. Story

6  as Defendant's Chief Operating Officer, asserts factual knowledge related to the case, and

7  includes twelve exhibits. (Story Decl., Exs. A-L.) The facts asserted in Defendant's Response

8  rely extensively on the Story Declaration and its accompanying exhibits.

9  In her Reply, Plaintiff argues that the Story Declaration should be excluded because:

10  (1) Defendant did not name Ms. Story as a witness in its initial disclosures or discovery

11  responses; and (2) the Story Declaration does not sufficiently explain Ms. Story's foundation of

12  personal knowledge. Plaintiff further argues that the Story Declaration is a "sham" declaration

13  that recites facts contradictory to Defendant's prior testimony with the sole purpose of defeating

14  summary judgment. Defendant responds that since Ms. Story's name was disclosed in its

15  responses to interrogatories, Defendant was not required to supplement its disclosures and

16  discovery responses pursuant to Rule 26(e)(1)(A). Ms. Story's name was mentioned twice in

17  Plaintiff's discovery responses: as a person who assisted in preparing answers to Plaintiff's first

18  set of interrogatories (dkt. # 32 at 10:3-5), and again as the verification signatory for answers to

19  Plaintiff's second set of interrogatories (*id.* at 42.) Having disclosed Ms. Story as a potential

20  witness in writing during the discovery process pursuant to Rule 26(e)(1)(A), Defendant argues

21  that no further supplemental disclosure was needed.

22  Rule 26(a)(1)(A)(i) requires parties to disclose "the name and, if known, the address and

23  telephone number of each individual likely to have discoverable information—along with the

1   subjects of that information—that the disclosing party may use to support its claims or defenses."

2   The duty to disclose is ongoing, and parties must supplement this disclosure as new information

3   becomes available. Fed. R. Civ. P. 26(e). Courts have found that "the mere mention of a name in

4   a deposition or interrogatory response is insufficient to satisfy Rule 26(a)(1)(A)(i)." *Lujan v.*

5   *Cabana Mgmt., Inc.*, 284 F.R.D. 50, 72 (E.D.N.Y. 2012); *see Benjamin v. B & H Educ., Inc.*, 877

6   F.3d 1139, 1150 (9th Cir. 2017) (quoting *Lujan*). Failing to disclose a witness until the summary

7   judgment stage can result in the witness's exclusion unless the failure to disclose was

8   substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *Benjamin*, 877 F3d at 1150. Here,

9   Defendant offers no explanation as to why Ms. Story was not disclosed as a witness before their

10  opposition for summary judgment.

11          Furthermore, the Story Declaration lacks sufficient foundation to show that Ms. Story has

12  personal knowledge of the statements in her declaration. For instance, Ms. Story attested that Mr.

13  McIntire resided in the Unit throughout 2019 (Story Decl. at ¶ 8) without providing any basis to

14  explain how she, as a HASCO executive, would know Mr. McIntire's, or any of HASCO's

15  tenants', day-to-day living situation.[5] Ms. Story also attested, again without explaining any basis

16  for her knowledge, that Plaintiff's "property included many stolen items." (*Id.* at ¶ 29.) There is

17  no explanation as to how Ms. Story knew Plaintiff's property was stolen beyond Defendant's

18  suspicions. Perhaps most egregiously, Ms. Story stated that VAWA notices were attached to all

19  pay or vacate notices that were delivered to Plaintiff. (*Id.* at ¶ 6.) If admissible, this statement

20  would be meaningful because whether VAWA notices were delivered to Plaintiff with every pay

21  or vacate notice is central to Plaintiff's claims. "A conclusory, self-serving affidavit, lacking

22

23  _____

[5] Furthermore, whether Mr. McIntire resided in the Unit after Plaintiff reported being a victim of domestic violence is not a factor included in either VAWA's text or regulatory guidance. *See* 34 U.S.C. § 12491; 24 C.F.R. § 5.2005.

1   detailed facts and any supporting evidence, is insufficient to create a genuine issue of material

2   fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended*

3   (Apr. 11, 1997).

4          Ms. Story's declaration is also contradicted by the deposition testimony of Defendant's

5   own witnesses. Defendant's corporate designee Sarah Max testified on behalf of HASCO that

6   she did not know whether pay or vacate notices included the necessary VAWA forms. (Crain

7   Decl., Ex. 17 at 6.) Ms. Whittaker, who was personally involved in producing and delivering

8   notices to Plaintiff, similarly testified that she did not know if anyone at HASCO gave Plaintiff a

9   copy of the VAWA forms. (Crain Decl., Ex. 14 at 34.) Ms. Story's statement is further

10  contradicted by Defendant's own answer, which admits that at least one of Defendant's notices

11  did not provide any information related to VAWA. (Dkt. # 9 at ¶ 22.) Without any effort to

12  explain these discrepancies, Defendant "cannot create an issue of fact by an affidavit

13  contradicting [their] prior deposition testimony." *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d

14  262, 266 (9th Cir. 1991).

15         The Court finds that Defendant's willful failure to disclose Ms. Story as a witness was

16  not justified or harmless. Defendant did not disclose Ms. Story until the eleventh hour, depriving

17  Plaintiff of the opportunity to depose her or conduct discovery on her testimony. Furthermore,

18  the Court finds the conclusory, unsupported, and contradictory statements in the Story

19  Declaration amount to a sham declaration written purely to defeat summary judgment. *See*

20  *Kennedy*, 952 F.2d at 266-67. Accordingly, Plaintiff's Motion to exclude the Story Declaration is

21  granted as to the declaration's factual statements. However, the Court finds there is sufficient

22  basis for Ms. Story, as HASCO's COO, to attest to the accuracy and authenticity of the exhibits

23

1   attached to her declaration.[6] As a lesser sanction, the Court will admit the Story Declaration's

2   exhibits and consider them in its analysis. *See Merch. v. Corizon Health, Inc.*, 993 F.3d 733,

3   741-42 (9th Cir. 2021).

4       **C.**    **Plaintiff's VAWA Claim**

5           i.     *VAWA Rights Under 42 U.S.C. § 1983*

6       Plaintiff asserts that Defendant violated her federal VAWA housing rights under color of

7   state law pursuant to 42 U.S.C. § 1983. Section 1983 may be used as a mechanism for enforcing

8   rights guaranteed by a particular federal statute if: (1) the statute creates enforceable rights; and

9   (2) Congress has not foreclosed § 1983 claims under that statute.[7] *Blessing v. Freestone*, 520

10   U.S. 329, 340-42 (1997); *Anderson v. Ghaly*, 930 F.3d 1066, 1078-79 (9th Cir. 2019).

11       Enforceable rights exist if the statute: (1) is intended to benefit the class of which

12   Plaintiff is a member; (2) clarifies the nature of the right so that the judiciary is capable of

13   enforcement; and (3) is mandatory in nature. *Blessing*, 520 U.S. at 340-42; *Anderson*, 930 F.3d at

14   1078-79. Plaintiff's claim satisfies each of these factors. First, VAWA's housing protections are

15   meant to benefit victims of domestic violence and Plaintiff is a member of this class. *See* 34

16   U.S.C. § 12491. Second, the VAWA rights implicated in Plaintiff's claim—prohibiting

17   discrimination in housing based on domestic violence victim status and requiring notices of

18   VAWA rights under enumerated circumstances—are not "vague and amorphous" and are not

19   otherwise incapable of enforcement by the judiciary. *See* 34 U.S.C. §§ 12491(b)(1), (d)(2).

20   Third, the VAWA rights asserted here are mandatory. *See, e.g.*, 34 U.S.C. §§ 12491(b)(1) ("An

21   applicant for or tenant of housing . . . ***may not*** be denied . . . .") (emphasis added), (d)(2) ("Each

22

23

---

[6] At oral argument, Plaintiff's counsel did not object to the admission of the Story Declaration's exhibits.

[7] Defendant did not argue that Plaintiff's claim was improper under § 1983. (*See* Resp. at 7-11.)

public housing agency . . . **shall** provide the notice . . . .) (emphasis added). Meeting all three prongs creates a rebuttable presumption that the asserted VAWA rights are enforceable. Defendant made no arguments to rebut this presumption (*see* Resp. at 7-11), and the Court finds that Plaintiff's VAWA rights are enforceable under § 1983.

Next, a federal statute forecloses the possibility of a § 1983 claim if: (1) the statute has an express provision precluding § 1983 actions; or (2) "a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing*, 520 U.S. at 341. VAWA's text includes neither express provisions precluding § 1983 actions, nor a comprehensive system to enforce violations of its housing rights. Again, Defendant did not argue otherwise. (*See* Resp. at 7-11.)

Accordingly, the Court finds that Plaintiff may assert a claim for violations of her VAWA rights pursuant to § 1983.

>    ii.    *VAWA's Protections and Requirements*

VAWA's housing protections state that a covered tenant "may not be denied admission to, denied assistance under, terminated from participation in, or evicted from the housing" because the tenant is a victim of domestic violence, if the tenant "otherwise qualifies for admission assistance, participation, or occupancy." 34 U.S.C. § 12491(b)(1).

VAWA includes mechanisms for agencies to ensure that victims of domestic violence maintain housing. For example, an agency "may bifurcate a lease" to "evict, remove, or terminate assistance to" a tenant who engages in domestic violence "without evicting, removing, terminating assistance to, or otherwise penalizing a victim of such criminal activity who is also a tenant." 34 U.S.C. § 12491(b)(3)(B)(i). If the public housing agency "evicts, removes, or terminates assistance to" a tenant who "is the sole tenant eligible to receive assistance under a

covered housing program," the agency "shall provide any remaining tenant or resident an opportunity to establish eligibility for the covered housing program." *Id.* at § 12491(b)(3)(B)(ii). If they "cannot establish eligibility," the agency "shall provide the tenant or resident a reasonable time . . . to find new housing or to establish eligibility for housing under another covered housing program." *Id.*

Documentation of the victim's status as a domestic violence victim is not required, but the agency may—in writing—request documentation after a tenant "represents to" an agency that they are entitled to VAWA's protection. 34 U.S.C. § 12491(c)(1). If the agency requests documentation in writing, the tenant has 14 business days to provide a form of documentation out of the options listed in subsection (3). 34 U.S.C. § 12491(c)(2). The agency may not require a tenant to provide a particular form of documentation from those options. 34 U.S.C. §§ 12491(c)(1), (3). Failure to provide documentation may result in denial of admission, denial of assistance, termination of participation, and/or eviction. 34 U.S.C. § 12491(c)(2)(A).

The agency must also provide a VAWA-related notice of rights and a documentation form to applicants and tenants: when "the applicant is denied residency" in a covered unit; when "the individual is admitted to a" covered unit; and "with any notification of eviction or notification of termination of assistance." 34 U.S.C. § 12491(d)(2). The notice of VAWA rights and documentation form must be in accordance with Forms HUD-5380 and 5382 (together, the "VAWA Forms"), respectively. 24 C.F.R. § 5.2005(a); *see* U.S. Dep't of Hous. & Urb. Dev., *Violence Against Women Act (VAWA), VAWA Forms*, https://www.hud.gov/VAWA#VAWA-Forms (last visited Apr. 22, 2024).

In addition, several related regulations on how to implement HUD housing programs govern an agency's duties when domestic violence occurs in a covered household. If a family

breaks up because of domestic violence, the agency "must ensure that the victim retains assistance." 24 C.F.R. § 982.315. Likewise, agencies must continue to assist tenants who are victims of domestic violence when recipients of VASH vouchers are the perpetrators of said violence, even if the victim would not be independently eligible to hold a VASH voucher:

> Generally, in the case of a family break-up, the HUD-VASH assistance must stay with the HUD-VASH veteran. However, in the case of domestic violence . . . in which the HUD-VASH veteran is the perpetrator, the victim must continue to be assisted. Upon termination of the perpetrator's HUD-VASH voucher due to the perpetrator's acts of domestic violence, dating violence, sexual assault, or stalking, the victim must be given a regular HCV if one is available . . . . If a regular HCV is not available for the victim, the perpetrator must be terminated from assistance, and the victim will continue to utilize the HUD-VASH voucher.

86 Fed. Reg. 53207-01, 53212 (Sept. 27, 2021) (to be codified at 24 C.F.R. pts. 982, 983).

Finally, the regulatory guidance interpreting VAWA expresses a strong preference against evicting victims of domestic violence. 24 C.F.R. § 5.2009(c) (encouraging housing providers "to undertake whatever actions permissible and feasible" to assist victims of domestic violence to remain in their units).

       *iii.*     *Plaintiff Was Entitled to Protection Under VAWA*

To assert her VAWA rights, Plaintiff needed only to "represent[] to" HASCO that she was entitled to protection under VAWA.[8] 34 U.S.C. § 12491(c)(1). Viewing the evidence in the light most favorable to Defendant, the Court finds there is no material question of fact that Plaintiff represented to HASCO that she was subject to VAWA's protections.

In its Response, Defendant cites conflicting testimony as to whether Plaintiff delivered a letter disclosing her status to a HASCO employee. (Resp. at 9; McIntire Decl. at ¶ 10, Ex. 19; Repass Decl., Ex. Q at 2.) While there is conflicting testimony as to whether this letter was

---

[8] As an initial matter, the parties agree that HASCO was a covered housing provider under VAWA and as HASCO's tenant, Plaintiff was covered by VAWA. (Dkt. # 9 at ¶ 51.)

1   delivered, the undisputed facts show that prior to this event Plaintiff represented to HASCO that

2   she was a "VAWA victim." On February 7, 2020, HASCO employee Kristen Whittaker visited

3   Plaintiff in the Unit. (McIntire Decl. at ¶ 13, Ex. 6.) Though the exact contents of this interaction

4   are disputed, Defendant admitted that Plaintiff's status as a domestic violence victim under

5   VAWA was discussed. Following this event, Ms. Whittaker wrote to colleagues that Plaintiff

6   "has documentation of being a VAWA victim." (Crain Decl., Ex. 8 at 2.) At her deposition, Ms.

7   Whittaker similarly testified that "[Plaintiff] informed me that she has documentation of being a

8   VAWA victim." (Crain Decl., Ex. 14 at 16-17.) Though Ms. Whittaker also testified that she did

9   not actually know whether Plaintiff was a "VAWA victim," that she asked Plaintiff to provide

10  documentation, and that Plaintiff never followed up with documentation, these facts do not

11  negate Plaintiff's representation. (Crain Decl., Ex. 14 at 16-17.) The fact that Ms. Whittaker

12  asked for documentation, albeit not in writing, is further indication that HASCO understood

13  Plaintiff was asserting her rights under VAWA. Additionally, Plaintiff represented her status to

14  HASCO on at least two other occasions. (*See, e.g.*, Crain Decl. Ex. 7 (requesting "aid for victims

15  of domestic violence" in email to Ms. Whittaker); McIntire Decl., Ex. 23 at 3 (indicating in

16  HASCO application for housing assistance that Plaintiff could be homeless because of domestic

17  violence).) Given these undisputed facts, Plaintiff has met the low bar of "represent[ing]" to

18  Defendant that she was entitled to VAWA's protection.

19        HASCO also argues that Plaintiff failed to provide documentation of her status as a

20  victim of domestic violence. (Resp. at 9.) Plaintiff's supposed "failure" to provide

21  documentation in response to an oral request is immaterial because an agency's request for

22  documentation must be in writing. 34 U.S.C. § 12491(c)(1). Nowhere does Defendant assert that

23  it requested documentation of Plaintiff's domestic violence victim status in writing, and Ms.

Whittaker admitted that she made no written request. (Crain Decl., Ex. 14 at 18.) Since VAWA did not require Plaintiff to provide documentation of her status absent HASCO's written request, Plaintiff's representation was sufficient. Furthermore, Defendant's failure to put its request in writing would have initiated a 14-day window in which Plaintiff would have either provided documentation required by VAWA or declined to provide such documentation. *See* 34 U.S.C. § 12491(c). It is Defendant's fault that this procedure did not move forward.

### iv.    *Plaintiff's Allegedly Unlawful VAWA Policies or Customs Claim*

Since HASCO is a municipal corporation, Plaintiff must show under 42 U.S.C. § 1983 that Defendant's policies or customs violated her federal rights under color of state law. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Having found that Plaintiff was entitled to federal statutory rights under VAWA, the next inquiry is whether Defendant had policies or customs that violated her rights. Plaintiff must show that her injury was a result of "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *See Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

Plaintiff asserts that three of HASCO's policies or customs violated her VAWA protections: (1) HASCO's formal policy of refusing to give VASH vouchers to victims of domestic violence; (2) HASCO's official practice of only giving VAWA notices to the head of household; and (3) HASCO's custom of failing to provide the VAWA Forms with termination notices. (Mot. at 16.)

### v.    *Formal Policy of Refusing VASH Vouchers to Non-Veterans*

Plaintiff first argues that HASCO had an official written policy that VASH vouchers must stay with veterans. Enforcing such a policy allegedly violated Plaintiff's VAWA rights

because she would be entitled to receiving assistance as a domestic violence victim. While a written policy to this effect exists (Crain Decl., Ex. 29 at § 18-III.D.), Defendant has also identified a written policy that allows VASH vouchers to be transferred to non-veteran tenants if they are victims of domestic abuse (Story Decl., Ex. L at § 18-III.G.). In tandem, these policies could be interpreted to mean that while VASH vouchers must generally stay with the veteran, they may be transferred to a non-veteran victim of domestic violence. Viewing these facts most favorably to Defendant, there is a question of material fact as to whether HASCO had a formal policy barring non-veterans from receiving VASH vouchers.

However, the existence of a formal policy does not prevent a plaintiff from prevailing on *Monell* liability if they can show "a custom or practice of violating a written policy." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021) (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075 n.10 (9th Cir. 2016)). A plaintiff must show a longstanding practice or custom "so widespread as to have the force of law." *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 884 (9th Cir. 2022) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)). A custom or practice may take the form of "deliberate indifference," where the defendant's failure to act results in the plaintiff's injury. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). This includes instances where the defendant failed to train or supervise its staff to adequately protect the rights of those with whom they interact. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). Liability can also be established where a representative with "final policymaking authority" causes, ratifies, or is deliberately indifferent to the agency's violation. *Christie v. Iopa*, 176 F.3d 1231, 1235-41 (9th Cir. 1999).

Having considered all material undisputed facts in the light most favorable to Defendant, the Court finds that HASCO had a custom or practice of denying VASH vouchers to non-veteran

victims of domestic violence, which violated Plaintiff's federal VAWA rights and resulted in her injury. Defendant's repeated assertion that Plaintiff could not hold a VASH voucher because she is not a veteran was incorrect. In fact, there are circumstances where a public housing agency must transfer the VASH voucher to a non-veteran victim of domestic violence or provide the victim with an alternative source of assistance. *See* 24 C.F.R. § 982.315; 86 Fed. Reg. at 53212; *see also* 34 U.S.C. § 12491(b)(1). Likewise, Defendant's focus on whether Mr. McIntire's VASH voucher was terminated ignores the fact that only HASCO had the power to terminate the voucher. HASCO refused to exercise that power, instead terminated Plaintiff's assistance, and made no effort to remedy its mistake when Plaintiff repeatedly represented that she was entitled to VAWA's protections. The procedural failures in this case fall squarely upon Defendant.

Defendant's treatment of Plaintiff was not an isolated, single incident.[9] HASCO failed to act when Plaintiff repeatedly represented her status as a domestic violence victim. To the extent documentation from Plaintiff was necessary to terminate Mr. McIntire's VASH voucher, HASCO failed to make a written request for documentation. HASCO then failed to implement a family breakup procedure; failed to bifurcate the McIntires' lease; failed to terminate Mr. McIntire's VASH voucher; failed to investigate whether Plaintiff could use an alternative form of assistance; and, if that remedy was unavailable, failed to allow Plaintiff to use Mr. McIntire's VASH voucher. Above all, HASCO failed to ensure that Plaintiff maintained assistance for which she was eligible. Such a repeated failure to act shows a practice of deliberate indifference towards Plaintiff's status as a victim of domestic violence.

Furthermore, the decision to deny the VASH voucher to Plaintiff as a non-veteran victim of domestic violence was a decision of a final policymaker. In an email response to Plaintiff's

---

[9] Defendant does not argue otherwise. Defendant's only defense is that it always complied with VAWA. (*See* Resp. at 7-11.)

counsel, HASCO's Director of Tenant Based Assistance Jodie Halsne stated that "VASH vouchers can only be held by eligible veterans who are referred to HASCO by the VA." (Crain Decl., Ex. 10 at 1). In her corporate deposition, Ms. Halsne again stated, this time in HASCO's official capacity, that Plaintiff "was not eligible for that [VASH] voucher, that is true."[10] (Crain Decl., Ex. 17 at 65.) Ms. Halsne's statements as HASCO's Director of Tenant Based Assistance and in her capacity as a corporate designee show that HASCO's policymakers were behind Defendant's practice.

There is also undisputed evidence of HASCO's failure to train employees who interacted with tenants on any procedures or requirements related to VAWA. Kristin Whittaker, whose role as Senior Asset Manager required her to interact directly with tenants and supervise employees in their interactions with tenants, testified that she had never had training on how to implement VAWA, and was not aware of HASCO offering any such trainings. (Crain Decl., Ex. 14 at 11, 13-14, 29.) The Court finds that HASCO's tenant-interacting staff were not sufficiently trained to follow procedural safeguards that would have preserved Plaintiff's VAWA rights.

Ultimately, Defendant's noncompliance with VAWA deprived Plaintiff of her opportunity to acquire Mr. McIntire's VASH voucher. After failing to seek documentation of Plaintiff's status as a domestic violence victim, HASCO again failed to determine whether Mr. McIntire's VASH voucher should be terminated, and whether Plaintiff could have continued to receive assistance under VASH or another program. If not for HASCO's refusal to consider

---

[10] Ms. Halsne also testified that she oversaw the department that administers HUD voucher funding and that she was personally responsible for making related changes to HASCO's policies in its administrative plan. (Crain Decl., Ex. 15 at 6-7, 15.) Having found that Ms. Halsne had the power to establish HASCO policy related to HUD vouchers, the Court finds that Ms. Halsne had "final policymaking authority" for purposes of this analysis. *See Lutheran Day Care v. Snohomish Cnty.*, 119 Wn. 2d 91, 123-24 (Wash. 1992).

transferring VASH vouchers to non-veteran domestic violence victims, Plaintiff would have had the opportunity to maintain assistance.

### vi.    Customs Related to Notice

The Court also finds that HASCO's policy or custom of only providing notice to the head of household violated Plaintiff's VAWA rights. Defendant admits that this was their official practice but argues that the practice did not violate Plaintiff's VAWA rights. In their Response, Defendant asserts that they had no obligation to provide Plaintiff with any notices because she was not the head of household or holder of the VASH voucher. (Resp. at 9-11.) This view is inapposite to VAWA's provisions and accompanying regulations, which require notice be sent to each adult tenant.[11] 34 U.S.C. § 12491(d)(2); 24 C.F.R. § 5.2005 (requiring agency to provide the VAWA Forms "to each of its tenants"). Furthermore, Plaintiff's removal as a beneficiary under the VASH voucher was an event that required such notice. VAWA's text requires notice of "termination of assistance" to "tenants of housing" and is not limited to circumstances where a voucher is terminated. 34 U.S.C. § 12491(d)(2). To ignore this requirement would allow a perpetrator of domestic violence to easily circumvent VAWA's housing protection by simply removing their victim as a beneficiary of their housing program. Without knowledge of their rights, or even knowledge of their loss of assistance, a victim would be unable to exercise VAWA's protections.

Finally, the Court finds that HASCO's policy or custom of not providing VAWA Forms with termination notices also violated Plaintiff's federal rights. VAWA requires that the VAWA Forms are included "with any notification of eviction or notification of termination of

---

[11] Likewise, HUD's official interpretive guidance confirms that the VAWA Forms must be provided to "[e]ach adult tenant of public housing." HUD PIH Notice 2017-08 at 18 (May 19, 2017) (available at: https://www.hud.gov/sites/documents/PIH-2017-08VAWRA2013.PDF).

1    assistance." 34 U.S.C. § 12491(d)(2)(C). Plaintiff attested that no VAWA Forms were ever

2    included with any of Defendant's eviction notices. (McIntire Decl. at ¶¶ 8, 11-14.) Defendant

3    asserts, without any factual support, that VAWA Forms were delivered at all necessary intervals.

4    (Resp. at 11). However, testimony from Defendant's own employees who were tasked with

5    delivering notices to Plaintiff stated that HASCO had a "policy" ***not*** to deliver or even generate

6    the VAWA Forms. Defendant's corporate designee Sarah Max testified that she did not know

7    whether VAWA forms were given to tenants with notices, and instead deferred to HASCO

8    Senior Asset Manager Kristin Whittaker's knowledge. (Crain Decl., Ex. 17 at 6.) Ms. Whittaker,

9    to whom HASCO's corporate witness deferred, similarly testified that she did not know if

10   anyone at HASCO gave Plaintiff a copy of the VAWA Forms. (Crain Decl., Ex. 14 at 34.)

11   Instead, she stated that tenants could find the document online, and that "[i]t's not generated as a

12   policy." (*Id.*)

13        Furthermore, Defendant admitted that they do not keep records of whether the VAWA

14   Forms were ever generated or delivered. (Crain Decl., Ex. 17 at 5-6.) While Defendant may not

15   be legally required to keep such records, the failure to generate such records supports a finding

16   that Defendant's practice was deliberately indifferent to Plaintiff's VAWA rights. *See Martin for*

17   *C.M. v. Hermiston Sch. Dist. 8R*, 499 F. Supp. 3d 813, 849 (D. Or. 2020) (citing *Oviatt By &*

18   *Through Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992) (finding support for deliberate

19   indifference claim where municipal policy lacked procedures to ensure detainees' rights were not

20   violated)). Since the uncontroverted evidence shows that Plaintiff never received any VAWA

21   Forms, that HASCO did not generate them "as a policy," and that HASCO maintained no

22   records of whether forms were provided, the Court finds that Defendant had an unlawful policy

23   or practice of failing to provide notice as required by VAWA.

1    Finally, the Court finds that Defendant's unlawful notice practices caused Plaintiff's

2    injury. If Plaintiff had been notified when she was removed from the VASH voucher and been

3    given the VAWA Forms, she would have been informed of her entitlement to assistance under

4    VAWA and would have had the opportunity to submit documentation. Defendant's failure to

5    follow VAWA's procedural safeguards prevented Plaintiff from taking further steps towards

6    fulfilling VAWA's protections.

7    At almost every juncture, HASCO followed practices that disregarded their duties under

8    VAWA and instead assisted Plaintiff's abuser in depriving Plaintiff of her housing and benefits.

9    Having found that HASCO's policies and customs violated Plaintiff's rights, the Court grants

10   Plaintiff's Motion as to its VAWA claim.

11   **D.      Plaintiff's Due Process Claim**

12   Plaintiff's next cause of action asserts that HASCO violated her procedural due process

13   rights by failing to provide her with notice and a hearing regarding her removal from Mr.

14   McIntire's VASH voucher. When analyzing due process procedures, the Court must first

15   determine whether a protected property interest is at stake. *See Mathews v. Eldridge*, 424 U.S.

16   319, 332 (1976). The Ninth Circuit has held that beneficiaries of Section 8 housing "have a

17   property interest in Section 8 benefits to which the procedural protections of the due process

18   clause apply." *See Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1191 (9th Cir.

19   2015); *Nozzi v. Hous. Auth. of City of Los Angeles*, 425 F. App'x 539, 541 (9th Cir. 2011)

20   ("Section 8 participants have a property interest in housing benefits[.]") (citing *Ressler v. Pierce*,

21   692 F.2d 1212, 1215 (9th Cir. 1982)). Having found no contrary authority, the Court sees no

22   reason why this principle should not be extended to Plaintiff as a beneficiary of Mr. McIntire's

23   VASH voucher.

If a substantive right exists, the Court must weigh three factors: (1) the nature of the interest and the degree of potential deprivation that may be created; (2) the fairness and reliability of existing procedures and the probable value of additional procedural safeguards; and (3) the public interest, including administrative burden or other societal costs, associated with additional procedures. *Nozzi*, 806 F.3d at 1192-93.

Here, Plaintiff lost her housing benefits in their entirety. Since previous courts have found even small increases to tenants' rent qualify as a substantial deprivation, the Court finds that the loss of all housing benefits is sufficient. *See, e.g.*, *Nozzi*, 806 F.3d at 1193 (finding sufficient deprivation where "decrease in payment standards affected Section 8 beneficiaries' rent by an average of $104 per month"); *Geneva Towers Tenants Org. v. Federated Mortg. Invs.*, 504 F.2d 483, 491 (9th Cir. 1974) ("A rise in the cost of housing could force tenants to forego other perhaps necessary purchases and could even force some tenants to seek other less expensive housing.").

The Court also finds that the risk of erroneous deprivation is high without Plaintiff's proposed safeguards. As previously discussed, HASCO gave Plaintiff no notice that her assistance under Mr. McIntire's voucher was being terminated and instead relied on the perpetrator of her domestic violence to relay this information. The risk of erroneous deprivation in this instance is obvious and was borne out—Plaintiff had no idea that Mr. McIntire removed her as a beneficiary of the VASH voucher. Accordingly, HASCO should have given Plaintiff at least some process to contest its determination. A victim of domestic violence must be given some avenue to assert her VAWA rights, especially where, as here, the agency has failed to implement its own procedures to ensure her rights to assistance are protected.

1    Finally, the Court finds that additional procedural safeguards are not overly burdensome

2 given the circumstances. The Ninth Circuit has found that notices regarding changes to

3 beneficiaries' rights "place no burden on the Housing Authority." *Nozzi*, 806 F.3d at 1198.

4 Furthermore, notice to Plaintiff is already required by VAWA, so the burden would be the same

5 as that already required by federal law. *See* 34 U.S.C. § 12491(d); 24 C.F.R. § 5.2005(a)(2). As

6 discussed, HASCO's responsibility to provide Plaintiff with at least some form of due process is

7 not overly burdensome when the agency has already failed in its procedural duties to ensure a

8 victim of domestic violence receives the assistance to which she is entitled. HASCO's failure to

9 provide Plaintiff with any process was unjustified.

10    Having found there are no genuine issues of material fact as to whether HASCO

11 complied with its due process requirements, the Court grants Plaintiff's Motion as to her due

12 process claim.

13    **E.    Breach of Contract**

14    Plaintiff's breach of contract claim is predicated on the voucher addendum, also known

15 as the HAP Contract, to the Rental Agreement. HUD requires the HAP Contract to be

16 incorporated into all rental agreements for covered tenants. 24 C.F.R. § 982.308. Specifically,

17 Part B, § 9 of the HAP Contract requires the housing agency "to comply with the Violence

18 Against Women Act . . . and HUD's implementing regulation . . . and program regulations."

19 (Crain Decl., Ex. 11 at 6.) Part C, § 9 further incorporates the protections of VAWA and related

20 regulations. (*Id.* at 11-13.) Plaintiff argues that Defendant violated this agreement by failing to

21 guarantee her assistance and failing to provide necessary VAWA Forms, as discussed *supra*.

22 Unlike Plaintiff's § 1983 claims, Plaintiff need not show a policy or custom of violating her

23 rights.

Breach of contract requires "that (1) a duty imposed by the contract (2) was breached, with (3) damages proximately caused by the breach." *Work-Force Sols., Inc v. Antoine Creek Farms, LLC*, 3 Wn. App. 2d 1010 (Wash. Ct. App. Div. 3, 2018). The first element is established since the parties agree that HASCO had an obligation to comply with VAWA under the Rental Agreement and HAP Contract. (Dkt. # 9 at ¶ 63; *see* Crain Decl., Ex. 11.) Defendant's only argument in opposition to Plaintiff's breach of contract claim is that "HASCO provided Plaintiff with VAWA Notices at all legally required times." (Resp. at 12.) Having found undisputed material facts showing that HASCO did not comply with VAWA when it terminated Plaintiff's assistance due to her status as a domestic violence victim and failed to provide Plaintiff with the necessary VAWA Forms, and that HASCO's failure caused Plaintiff's injury, the Court grants Plaintiff's Motion as to her breach of contract claim.

### F.     Conversion

Plaintiff alleges that Defendant's disposal of her property left in the Unit after her eviction made Defendant liable for conversion. "Conversion involves three elements: (1) willful interference with chattel belonging to the plaintiff, (2) by either taking or unlawful retention, and (3) thereby depriving the owner of possession." *United Fed'n of Churches, LLC v. Johnson*, 598 F. Supp. 3d 1084, 1100 (W.D. Wash. 2022). Undisputed facts show that Defendant willfully interfered with Plaintiff's property and deprived her of possession. The crux of Plaintiff's conversion claim is whether Defendant's conduct was lawful under Washington's law on the treatment of tenants' property after evictions.

When a landlord executes a writ of restoration, the landlord may take possession of any property found on the premises, store the property in any reasonably secure place, and sell or dispose of the property as provided below. RCW 59.18.312(1). Storage is required if the tenant

makes a written request within three days of the writ of restoration's service. *Id.* If the tenant

does not make a written request within three days, the landlord may either elect to store the

property or deposit the property on the nearest public property. *Id.* Before selling or disposing of

stored property with a cumulative value over $250, the landlord must notify the tenant of the

property's pending sale. RCW 59.18.312(3). Stored property must be returned to a tenant if the

tenant pays "actual or reasonable drayage and storage costs, whichever is less."

RCW 59.18.312(2). After 30 days from the date of this notice, the landlord may sell the property

and dispose of any property not sold. *Id.*

Here, HASCO executed a writ of restoration on December 28, 2021, and took possession

of Plaintiff's property. Though Plaintiff did not send HASCO a written request to store her

property within three days,[12] HASCO elected to store her property and determined that its

cumulative value was over $250.[13] However, HASCO subsequently failed to allow Plaintiff the

opportunity to pay reasonable storage and drayage costs and retrieve her property under RCW

59.18.312(2). Instead, Defendant's representative provided Plaintiff with a balance that

incorrectly included back rent, which Plaintiff was not required to pay. Additionally, Defendant

did not give Plaintiff any notice—let alone 30 days' notice—that her property would be

destroyed. Defendant destroyed Plaintiff's property on February 23, 2022, the day after Plaintiff

inquired about her balance and asked Defendant not to dispose of her property. (Resp. at 5; *see*

McIntire Decl., Ex. 28.) Defendant had no right to destroy Plaintiff's property without the notice

prescribed in RCW 59.18.312(3).

---

[12] Plaintiff's written request to store her property is dated January 30, 2022—more than three days after the service of the writ of restoration. (McIntire Decl., Ex. 27.) However, the timeliness of Plaintiff's request is irrelevant here because HASCO had already elected to store Plaintiff's property.

[13] Alternatively, HASCO could have elected not to store Plaintiff's property and instead deposited it on the nearest public property. *See* RCW 59.18.312(1).

Defendant argues that they were in communication with Plaintiff and her counsel and gave Plaintiff multiple opportunities to claim her property. After 45 days of storing Plaintiff's property, they disposed of the property without attempting to sell it. Defendant claims they could not sell Plaintiff's property because "[t]here was evidence that property found in the apartment included stolen property, and many items were contaminated by feces and drug paraphernalia, including used hypodermic needles."[14] (Resp. at 13.) The state of Plaintiff's property is not relevant here. Defendant deemed the property's cumulative value to be over $250 and managed to pack and move Plaintiff's belongings into storage, all despite the alleged contamination. Defendant's attempt to blame Plaintiff for failing to pick up her property is unpersuasive. HASCO frustrated Plaintiff's attempt to pay storage and drayage fees so that she could retrieve her property under RCW 59.18.312(2). Ultimately, RCW 59.18.312 did not permit Defendant to dispose of Plaintiff's property without first providing a 30-day notice of sale, and the undisputed facts, even when considered in a light most favorable to HASCO, show that Defendant provided no such notice. Having found that Defendant unlawfully deprived Plaintiff of her property, the Court grants Plaintiff's Motion on its conversion claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby ORDERS that:

1)      Plaintiff's Motion (dkt # 16) is GRANTED; and

2)      Summary judgment is GRANTED in favor of Plaintiff on the issue of liability as to Counts 1, 2, 3, and 6.

//

//

---

[14] As discussed *supra*, these accusations are not supported by sufficient facts.

Dated this 26th day of April, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge